# IN THE UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF ALABAMA NORTHEASTERN DIVISION

| | |
|---|---|
| **JEFF STOCKTON,** ) | |
| ) | |
| **PLAINTIFF,** ) | |
| ) | **CIVIL ACTION NO.:** |
| **v.** ) | |
| ) | |
| **RAM PARTNERS, LLC.,** ) | **JURY DEMAND** |
| ) | |
| **DEFENDANT.** ) | |

## COMPLAINT

### I. INTRODUCTION

1. This is a case alleging disability discrimination in violation of Title I of the Americans with Disabilities Act (ADA), 42 U.S.C. §§ 12111 *et seq.*, as amended by the Americans with Disabilities Act Amendments Act of 2008 (ADAAA). Plaintiff is entitled to equitable relief as well as compensatory and punitive damages, attorneys fees and costs. Plaintiff seeks a declaratory judgment, equitable relief and money damages, instituted to secure the protection of and to redress the deprivation of rights secured through the above-named statutes.

### II. JURISDICTION, VENUE AND ADMINISTRATIVE PREREQUISITES

2. This Court has jurisdiction pursuant to 28 U.S.C. Sections 1331, 1343(a)(4),

1

2001, 2002, and the ADA. Venue is proper in the Northern District of Alabama, Northeastern Division under 28 U.S.C. §1391(b).

3. Plaintiff has fulfilled all conditions precedent to the institution of this action under Title I of the Americans with Disabilities Act (ADA), 42 U.S.C. §§ 12111 *et seq.*, as amended by the Americans with Disabilities Act Amendments Act of 2008 (ADAAA), and 42 U.S.C. Section 1981a. Plaintiff timely filed his charge of discrimination within 180 days of occurrence of the last discriminatory act. Plaintiff timely filed his lawsuit within 90 days of the receipt of his Right-To-Sue Letter from the EEOC.

### III. PARTIES

4. Plaintiff, Jeff Stockton, is a male citizen of the United States, a resident of the State of Alabama, and is over nineteen (19) years of age.

5. Defendant RAM Partners, LLC ("RAM" or "Defendant") is an employer within the meaning of that term as used in Title I of the Americans with Disabilities Act (ADA), 42 U.S.C. §§ 12111 *et seq.*, as amended by the Americans with Disabilities Act Amendments Act of 2008 (ADAAA).

6. At all times relevant to the events set forth herein, Defendant has employed fifteen (15) or more employees.

7. The acts by Defendant were authorized, ordered, or done by Defendant's

officers, agents, employees, or representatives while they were actively engaged in the management of Defendant's business.

## IV. STATEMENT OF FACTS

8. Plaintiff worked for Defendant as a Maintenance Supervisor of the Capital Park apartment complex in Huntsville, Alabama.

9. Defendant is a RAM Partners is a full-service real estate management company that manages approximately 25,000 apartments throughout the United States, including the Capital Park complex where Plaintiff worked.

10. At Capital Park, Plaintiff reported to the property manager, Donna Hyche. Ms. Hyche in turn reported to Amy Tucker, the Area Vice President.

11. Plaintiff is a qualified individual with a disability, Type I diabetes, which limits him in numerous substantial life activities.

12. Plaintiff's diabetes is a physical impairment to a major life activity because it is a physical condition affecting the digestive, hemic and endocrine systems. In particular, Plaintiff's diabetes is an impairment that places a substantial limitation on his endocrine function.

13. Plaintiff has worked together with Mrs. Hyche for several years, and she has been aware of his diabetes during this time.

14. Ms. Tucker was informed of Plaintiff's diabetes shortly after RAM took over

management of the Capital Park complex on or around December 31, 2015.

15. Plaintiff takes insulin as a mitigating measure for his diabetes; however, without the mitigating measures of insulin, Plaintiff would be incapacitated and would be unable to eat, function in daily life, work, or perform numerous other major life activities.

16. However, with the mitigating effect of insulin, Plaintiff was able to fulfill the essential functions of his job.

17. Around July 13, 2016, Plaintiff was at work and felt as if he had a foreign object in his eye after seeing a bright flash of light. Plaintiff experienced an acute loss of vision in his right eye.

18. Plaintiff called his wife to pick him up, and his wife took him to the hospital. Plaintiff was diagnosed with Proliferative Diabetic Retinopathy. It was determined that Plaintiff had suffered a vitreous hemorrhage secondary to the Proliferative Diabetic Retinopathy.

19. Plaintiff's physician, Dr. Vikram Saini, took Plaintiff off work to allow the blood in his eye to settle.

20. On or around July 14, 2016, Plaintiff and his wife met with Ms. Hyche and Ms. Tucker to discuss the results of his doctor's evaluation and his need for a temporary leave of absence.

21. Plaintiff's doctor released him to return to work with a twenty pound lifting restriction due to his diabetes-related vitreous hemorrhage on or around July 21, 2016. Plaintiff provided Ms. Hyche with documentation to this effect.

22. Plaintiff further informed Ms. Hyche that he was scheduled for surgery on or around July 29, 2016.

23. On July 22, 2016, Plaintiff received a call from Ms. Tucker, who informed him that he could not return to work with any restrictions.

24. Defendant refused to allow Plaintiff to return to work at this time.

25. Plaintiff does not regularly lift more than twenty pounds as part of his job, and such lifting is not an essential function. For infrequent occasions when lifting was needing, it could have been performed by Plaintiff's Maintenance Assistant, Wesley Little.

26. Defendant could have accommodated Plaintiff by allowing him to return with a twenty pound lifting restriction.

27. Defendant denied Plaintiff a reasonable accommodation when it refused to allow him to return to work.

28. On July 29, 2016, Plaintiff successfully underwent surgery to correct the vitreous hemorrhage in his right eye.

29. After the surgery, a temporary twenty pound lifting restriction remained in

place.

30. At no point did Defendant request a return to work certification or other documentation from Plaintiff regarding his ability to return to work, with or without restrictions.

31. Before Plaintiff was released to work without restrictions, Defendant called Plaintiff on August 8, 2016 and asked Plaintiff to come to the office.

32. Defendant did not ask Plaintiff to bring a work certification or any medical documentation.

33. When Plaintiff arrived, Defendant terminated his employment without giving Plaintiff the opportunity to provide any documentation that Defendant might need to satisfy it regarding Plaintiff's eventual ability to return to work.

34. Defendant's position statement to the EEOC states that Plaintiff was terminated "because he could not perform the essential functions of his job, and he could not provide a date by which he could return to work and perform those functions."

35. This is false, as Defendant could have accommodated Plaintiff's disability by allowing him to return to work with a twenty pound lifting restriction.

36. In addition, although Plaintiff's doctor had not yet released him without restrictions, Defendant knew that Plaintiff's restrictions were temporary.

37. Plaintiff in the past has been asked to perform work at other locations in Northern Alabama where Defendant staffs Maintenance employees. Maintenance employees from other facilities could have assisted at Capital Park during Plaintiff's temporary absence.

38. As a full-service real estate management company that manages approximately 25,000 apartments throughout the United States, it would not have been an undue hardship for Defendant to accommodate Plaintiff's temporary absence.

39. Plaintiff was released to return to work without restrictions shortly after Defendant terminated his employment.

40. As a result of Defendant's actions, Plaintiff has suffered harm, including, but not limited to, loss of employment, denial of wages, compensation, and other benefits and conditions of employment. Additionally, Plaintiff has suffered injury, including pain, humiliation, mental anguish and suffering, and loss of enjoyment of life.

V. **CAUSES OF ACTION**

**COUNT I – Title I of the ADA – Denial of Reasonable Accommodation Resulting in Termination.**

41. Plaintiff realleges and incorporates by reference paragraphs 1 through 40 above with the same force and effect as if fully set out in specific detail herein below.

42. Plaintiff (1) is disabled within the meaning of the ADA; (2) is qualified to

perform the essential functions of the job with or without a reasonable accommodation; and (3) suffered damages when Defendant terminated his employment.

43. With, or without, a reasonable accommodation, Plaintiff was, and is, able to perform the essential functions of his former position. Plaintiff meets the definition of a qualified individual pursuant to 42 U.S.C. § 12111(8).

44. Plaintiff requested the reasonable accommodations of working with a twenty pound lifting restriction, or taking a temporary leave of absence until the he was able to work without restrictions, if Defendant would not permit him to work with the lifting restriction in place.

45. Defendant failed to engage in an interactive process and instead denied Plaintiff the reasonable accommodation of being allowed to work while taking his prescription medications, resulting in him being denied employment with Defendant in January, 2015 as a consequence of being denied a reasonable accommodation.

46. Accommodating Plaintiff's disability would not have posed an undue hardship for Defendant.

47. Defendant has imposed rules and standards which are not consistent with business necessity. These rules as applied have the effect of discriminating

against the Plaintiff on the basis of his disability.  42 U.S.C. § 12112(b)(6).

48. Plaintiff suffered damages as a result of Defendant's actions in denying him a reasonable accommodation, failing to engage in an interactive process, terminating his employment and refusing to reinstate him.

49. Defendant is an employer in accordance with 42 U.S.C. § 12111(5).

**COUNT II – Title I of the ADA – Status-Based Discrimination**

50. Plaintiff re-alleges and incorporates by reference paragraphs 1 through 49 above with the same force and effect as if fully set out in specific detail herein below.

51. Under Plaintiff's disability discrimination claim, Plaintiff states that (1) he is disabled within the meaning of the ADA; (2) he is qualified to perform the essential functions of the job with or without a reasonable accommodation; and (3) he suffered adverse employment actions because of the disability when Defendant terminated him and refused to reinstate him.

52. As stated, Plaintiff is an individual with a disability under the ADA in that he has a condition which substantially limits at least one major life activities and/or he is regarded as such and/or has a record of a disability.  42 U.S.C. § 12102.

53. Plaintiff (1) has a disability within the meaning of the ADA, has a record of

such impairment or was regarded as having a disability, (2) is otherwise qualified to perform the essential functions of the job, with or without reasonable accommodations by Defendant, and (3) has suffered an adverse employment action as a result of discrimination.

54. With, or without, a reasonable accommodation, Plaintiff was, and is, able to perform the essential functions of his former position. Plaintiff meets the definition of a qualified individual pursuant to 42 U.S.C. § 12111(8).

55. Defendant terminated Plaintiff's employment because it perceived him as disabled due to his previous disclosures of his disability status and the complications he experienced prior to his termination, because of his record of disability, or because of his actual disability.

56. Defendant has intentionally with deliberate indifference discriminated against Plaintiff and has terminated and classified Plaintiff in a way which adversely affects his opportunities and status on the basis of his disability, perceived disability, or record of disability. 42 U.S.C. §§ 12112.

57. Defendant has imposed rules and standards which are not consistent with business necessity. These rules as applied have the effect of discriminating against the Plaintiff on the basis of his disability. 42 U.S.C. § 12112(b)(6).

58. Defendant's termination of Plaintiff was unlawful and constitutes

discrimination against a qualified individual on the basis of a disability, a perceived disability and/or a record of disability.

59. Defendant, by its actions, has intentionally, maliciously and with reckless indifference discriminated against Plaintiff on the basis of his disability, his perceived disability and/or his record of a disability with regards to termination, employee compensation, benefits, and other terms and conditions of employment. 42 U.S.C. § 12112.

60. Defendant is an employer in accordance with 42 U.S.C. § 12111(5).

61. Plaintiff suffered damages as a result of Defendant's actions.

62. But for Plaintiff's disability, perceived disability, or record of disability, he would not have been terminated by Defendant.

**VI.   PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs respectfully prays that this Court assume jurisdiction of this action and after trial:

1. Issue a declaratory judgment that the employment policies, practices, procedures, conditions and customs of Defendant are violative of the rights of Plaintiffs as secured by the ADA

2. Grant Plaintiffs a permanent injunction enjoining Defendant, its agents, successors, employees, attorneys and those acting in concert with Defendant and at

Defendant's request from continuing to violate the ADA.

3. Enter an Order requiring Defendant to make Plaintiff whole by awarding them back pay (plus interest), punitive damages, compensatory damages, reinstatement or front pay, nominal damages, loss of benefits including retirement, pension, seniority and other benefits of employment.

4. Plaintiffs further pray for such other relief and benefits as the cause of justice may require, including, but not limited to, an award of costs, attorneys' fees and expenses.

**PLAINTIFFS DEMANDS A TRIAL BY STRUCK JURY**.

Respectfully submitted,

 /s/ L. William Smith
Jon C. Goldfarb asb-5401-f58j
L. William Smith asb-8660-A61s
Counsel for Plaintiff


**OF COUNSEL:**
WIGGINS, CHILDS, PANTAZIS,
FISHER & GOLDFARB LLC
The Kress Building
301 19th Street North
Birmingham, Alabama 35203
205-314-0500

**DEFENDANT'S ADDRESS**:
RAM Partners, LLC
c/o CT Corporation System
2 North Jackson St. Ste. 605

Montgomery, AL 36104